## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CHRISTINE D. COLLINS, A PROFESSIONAL
CORPORATION and CHRISTINE DEANNE
COLLINS, individually,

                                                Case No. 1:23-cv-00353-AT

              *Plaintiffs,*

    -against-

MCA RECEIVABLES, LLC D/B/A ALLY
FUNDING GROUP, YISROEL C. GETTER;
MARTIN MILLER; PARAGON CAPITAL
SOURCE, LLC; THE WOODS LAW FIRM, LLC;
JOHN DOES 1-10; and JOHN DOE
INVESTORS 1-10,

              *Defendants.*

## DEFENDANTS MCA RECEIVABLES, LLC'S AND YISROEL GETTER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

WELLS LAW P.C.
Will Parsons
229 Warner Road
Lancaster, New York 14086
(716) 983-4750
Email: will@wellspc.com

*Counsel for Defendants*
*MCA Receivables, LLC and*
*Yisroel Getter*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………………..iv

INTRODUCTION…………………………………………………………………….…..1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………....3

      I.     The Parties…………………………………………………………..…..3

      II.    The Purchase Agreement…………………………………………...…..3

      III.   Defendants' Breach of the Merchant Agreement and the Guaranty…………..…..7

      IV.   The Connecticut Action………………………………………………..…..7

      V.    The Federal Court Action……………………………………………………10

LEGAL STANDARD………………………………………………………..……...10

LEGAL ARGUMENT……………………………………………………………..…..11

      I.     Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits…..…11

           A.    Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Claim…………………………………………………..11

               1.    Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Claim Predicated on Collection of Unlawful Debt…12

                   a.    The Purchase Agreement Has Mandatory Reconciliation and Adjustment Provisions………………………………14

                   b.    The Purchase Agreement Has an Indefinite Term……….16

                   c.    The Purchase Agreement Does Not Make Merchant's Filing for Bankruptcy an Event of Default…………….....17

               2.    Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Claim Predicated on a Pattern of Racketeering Activity……………………………………………………..…17

                   a.    Plaintiffs Have Failed to Adequately Plead Wire Fraud…17

                   b.    Plaintiffs Have Failed to Adequately Plead the Continuity Requirement…………………………………18

3.      Plaintiffs' Section 1962(c) Claim Fails Because They Cannot Establish an Injury to Their Business or Property………………19

B.      Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Conspiracy Claim………………………………………...21

C.      Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Declaratory Judgment Claim………………………………………21

D.      Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Fraud Claim………………………………………………………..22

E.      Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Breach of Contract………………………………………………..22

F.      Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Section 1983 Claim………………………………………………23

G.      Plaintiffs Have Not Demonstrated a Likelihood of Success on Their CFAA Claim………………………………………………………....24

II.     Plaintiffs Have Not Demonstrated Irreparable Harm……………………………..24

III.    The Balance of the Equities and the Public Interest Militate Against Injunctive Relief……………………………………………………………….…………25

CONCLUSION……………………………………………………………………..……25

# TABLE OF AUTHORITIES

**Cases**

*Aliperio v. Bank of Am., N.A.*,
    764 F. App'x 236, 239 (3d Cir. 2019)……………………………………………20, 21

*Anderson v. Lincoln Ins. Agency Inc.*,
    2003 WL 291928, at *3 (N.D. Ill. Feb. 10, 2003)………………………………………20

*Calvary LLC v EBF Holdings, LLC*,
    2021 N.Y. Misc. LEXIS 5833, at *12 (Sup. Ct. 2021)…………………………………15

*Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*,
    159 A.D.3d 507, 507 (1st Dep't 2018)……………………………………………..13

*Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc.*,
    252 F. Supp. 3d 274, 282-83 (S.D.N.Y. 2017)………………………………...……13

*Com. Union Assurance Co. v. Milken*,
    17 F.3d 608, 612 (2d Cir. 1994)……………………………………………………20

*Cont. Transp. Servs., Inc. v. New Era Lending LLC*,
    2018 WL 11226077, at *5 (S.D.N.Y. Oct. 26, 2018)………………………..…………19

*Cosmas v. Hassett*,
    886 F.2d 8, 11 (2d Cir. 1989)…………………………………………………….....18

*DeFalco v. Bernas*,
    244 F.3d 286, 305 (2d Cir. 2001)…………………………………………….…….11

*Donatelli v. Siskind*,
    170 A.D.2d 433, 434 (2d Dep't 1991)……………………………………….…….13

*Dornberger v. Metro. Life Ins. Co.*,
    961 F. Supp. 506, 521 (S.D.N.Y. 1997)……………………………………...………20

*Fekety v. Gruntal & Co.*,
    190 A.D.2d 370, 371 (1st Dep't 1993)……………………………………….…18

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
    2022 WL 3536128, (S.D.N.Y. Aug. 17, 2022)………………………………....20, 21

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763, 768 (2d Cir. 1994)……………………………………………...…..20

*Giventer v. Arnow,*
    37 N.Y.2d 305, 309 (1975)……………………………………………………...…..13

*Grace Int'l Assembly of God v. Festa,*
    797 F. App'x 603, 605 (2d Cir. 2019)……………………………………...…..18

*Graham v. Connor,*
    490 U.S. 386, 393-94 (1989)………………………………………………...…..23

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989)…………………………………………………………...…..18

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.,*
    2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021)………………………………...3, 25

*K9 Bytes, Inc. v. Arch Cap. Funding, LLC,*
    57 N.Y.S.3d 625, 633 (N.Y. Sup. Ct. 2017)………………………………………....15, 16

*Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.,*
    2012 WL 1087341, at *6 (Sup. Ct. Suffolk Cty. Mar. 29, 2012)………………………..13

*Kennard L. P.C. v. High Speed Cap. LLC,*
    2020 N.Y. Misc. Lexis 10407, at *1-2 (N.Y. Sup. Ct. 2020)……………………………....13

*Lundy v. Cath. Health Sys. of Long Island Inc.,*
    711 F.3d 106, 119 (2d Cir. 2013)……………………………………………………...…..18

*Monowise Ltd. Corp. v. Ozy Media, Inc.,*
    2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018)……………………………...……..25

*New York ex rel. Schneiderman v. Actavis PLC,*
    787 F.3d 638, 650 (2d Cir. 2015)……………………………………………………...…..11

*OriginClear Inc. v. GTR Source, LLC,*
    2021 WL 5907878, at *6 (W.D.N.Y. Dec. 14, 2021)……………………………...…..15

*Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.,*
    141 N.Y.S.3d 319 (2d Dep't 2021)……………………………………………………..22

*Principis Cap., LLC v. I Do, Inc.,*
    201 A.D.3d 752 (2d Dep't 2022)……………………………………………………..13, 14, 17

*Quick v. EduCap, Inc.,*
    318 F. Supp. 3d 121, 138 (D.D.C. 2018)……………………………………………...…..20

*Redcell Corp. v. A.J. Trucco, Inc.*,
    2022 WL 683007, at *3 (S.D.N.Y. Mar. 8, 2022)……………………………………24

*Related Companies, L.P. v. Ruthling*,
    2017 WL 6507759, at *18 (S.D.N.Y. Dec. 18, 2017)…………………………………..17

*Rubenstein v. Small*,
    273 A.D. 102, 104 (1st Dep't 1947)………………………………………………………13

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479, 496 (1985)………………………………………………………………..20

*Seidel v. 18 E. 17th St. Owners*,
    79 N.Y.2d 735, 744 (1992)……………………………………………………...……13

*Silver v. Lavandeira*,
    2009 WL 513031, at *6 (S.D.N.Y. Feb. 26, 2009)……………………………………....11

*Societe Comptoir De L'Industrie Cotonniere, Establissements Boussac v. Alexander's Dep't Stores, Inc.*,
    190 F. Supp. 594, 595 (S.D.N.Y. 1961)………………………………………………11

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178, 184 (2d Cir. 2008)………………………………………………...……18

*Stern v. Highland Lake Homeowners*,
    2021 WL 1164718, at *5 (S.D.N.Y. Mar. 26, 2021)………………………………..…2, 11

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158, 1165 (2d Cir. 1993)……………………………………………..……20

*Streamlined Consultants, Inc. v. EBF Holdings LLC*,
    2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022)………………………...…15, 22

*Tender Loving Care Homes Inc. v. Reliable Fast Cash, LLC*,
    172 N.Y.S.3d 335, 340 (Sup. Ct. 2022)……………………………………………………15

*Tough Traveler, Ltd. v. Outbound Prod.*,
    60 F.3d 964, 968 (2d Cir. 1995)……………………………………………………24

*Trs. of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*,
    886 F. Supp. 1134, 1146 (S.D.N.Y. 1995)……………………………………………....21

*Ujueta v. Euro-Quest Corp.*,
    29 A.D.3d 895, 895-96 (2d Dep't 2006)……………………………………….…..13

*United Knitwear Co. v. N. Sea Ins. Co.*,
  203 A.D.2d 358, 360 (2d Dep't 1994)……………………………………………...18

*United States v. Binday*,
  804 F.3d 558, 569 (2d Cir. 2015)…………………………………………....18

*United States v. Greenberg*,
  835 F.3d 295, 305 (2d Cir. 2016)…………………………………………....17

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
  423 F.3d 137, 144 (2d Cir. 2005)………………………………………………...24

*West v. Atkins*,
  487 U.S. 42, 48 (1988)…………………………………………………………...23

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7, 24 (2008)……………………………………………………….……10

*Yellowstone Cap. LLC v. Cent. USA Wireless LLC*,
  110 N.Y.S.3d 485 (N.Y. Sup. Ct. 2018)……………………………………...14

*Zoo Holdings, LLC v. Clinton*,
  814 N.Y.S.2d 893 (Sup. Ct. 2006)……………………………………….……13

**Statutes**

18 U.S.C. § 1030…………………………………………………………………....24

18 U.S.C. § 1961………………………………………………………………….…13

18 U.S.C. § 1962……………………………………………………………...18, 21

42 U.S.C. § 1983……………………………………………………………...…23

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendants MCA Receivables d/b/a Ally Funding Group ("MCA Receivables") and Yisroel Getter ("Mr. Getter") (together, "Defendants") hereby submit this memorandum of law in opposition to the motion for a preliminary injunction of Plaintiffs Christine D. Collins, a Professional Corporation ("Merchant") and Christine Deanne Collins ("Guarantor") (together, "Plaintiffs") and state as follows.

## **INTRODUCTION**

Defendants respectfully submit that the Court should deny Plaintiffs' motion for a preliminary injunction and immediately dissolve the *ex parte* Temporary Restraining Order entered on January 17, 2023 (the "TRO").

This case involves Plaintiffs' breach of a September 23, 2022, agreement for the Purchase and Sale of Future Receivables with MCA Receivables (the "Purchase Agreement"). When Plaintiffs breached the Purchase Agreement mere days after receiving the purchase price, MCA Receivables (a Connecticut company) served a prejudgment writ of attachment on certain of Plaintiffs' banks pursuant to Connecticut's prejudgment remedy statute. Notwithstanding that Plaintiffs had expressly agreed to such a remedy in the Purchase Agreement, they moved to modify or dissolve the writ in the Connecticut action entitled *MCA Receivables, LLC v. Christine D. Colins, a Professional Corporation, et al.*, Docket No. HHDCV226162897S, Superior Court for the Judicial District of Hartford (the "Connecticut Action"). Plaintiffs' motion is scheduled to be heard on February 2, 2023.

Nevertheless – and without disclosing the earlier-filed Connecticut action or the hearing to be held on February 2, 2023 – Plaintiffs obtained from this Court *ex parte* injunctive relief, which, in a proposed order drafted by Plaintiffs, did not merely maintain the status quo, but purported to direct Plaintiffs' banks to return monies allegedly withdrawn pursuant to the Connecticut writ (*i.e.*,

effectively the relief that Plaintiffs are seeking in the Connecticut Action).[1]  Respectfully, Plaintiffs' obtaining such *ex parte* relief through forum shopping and material omissions should not be countenanced.  Plaintiffs' motion should be denied and the TRO immediately dissolved. To the extent Plaintiffs' banks released any funds, Defendants respectfully submit that Plaintiffs should be ordered to return those funds so the matter can be adjudicated on the merits in the proper forum (*i.e.*, the Connecticut court).

Plaintiffs' motion should also be denied because Plaintiffs have failed to meet the evidentiary threshold for a preliminary injunction.  A party seeking a preliminary injunction "must offer proof beyond the unverified allegations of the pleadings." *Stern v. Highland Lake Homeowners*, 2021 WL 1164718, at *5 (S.D.N.Y. Mar. 26, 2021).  Here, the only "proof [offered by Plaintiffs] beyond the unverified allegations of the pleadings" is the Declaration of Christine Deane Collins (the "Collins Declaration").  The Collins Declaration, however, focuses on alleged irreparable harm; it provides no facts to support any of Plaintiffs' causes of action, much less to demonstrate a likelihood of success on those causes of action (instead, Plaintiffs rely on their unverified Complaint, which is almost entirely cut-and-pasted from a pleading filed in another case).[2]

Even if Plaintiffs had provided facts to support their causes of action (and they have not), their motion should still be denied because they cannot demonstrate irreparable harm.  Plaintiffs delayed over three months in seeking injunctive relief for their alleged "immediate" and irreparable

---

[1] It is Defendants understanding that no money was ever withdrawn.  Rather, the banks merely placed a "hold" on the accounts.

[2] The pleading from which Plaintiffs cut-and-pasted is the Amended Complaint (Doc. No. 22) from *Haymount Urgent Care PC v. GoFund Advance, LLC*, Case No. 1:22-cv-01245-JSR (S.D.N.Y. 2022).

harm.  Such a delay precludes a finding of irreparable harm and, in fact, courts in the Second Circuit "typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."  *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021).

Finally, the equities militate against injunctive relief.  On December 5, 2022, Mr. Getter received the following text message:

> I don't have time for this bullshit I know where you live. If you don't release christine Collins money, I'm coming for you and your family.

> I have contacts all over the states. Once I send them your address, it's done. I'll kill you and your family

While Plaintiffs' California counsel denied that Plaintiffs sent this message, it is undeniable that Plaintiffs have acted inequitably in obtaining *ex parte* injunctive relief from this Court without disclosing the Connecticut Action and the upcoming hearing in that case where this matter should be properly adjudicated.  Respectfully, Plaintiffs' motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      The Parties.

MCA Receivables is a Connecticut limited liability company engaged in the receivables financing business.  (Declaration of Yisroel Getter ("Getter Decl.") ¶ 4).[3]  Merchant is a California corporation.  (Doc. No. 1, Compl. ¶ 22).  Guarantor is an individual residing in California and a principal of Merchant.  (*Id.* ¶ 23).

### II.     The Purchase Agreement.

On September 23, 2022, MCA Receivables and Merchant entered into the Purchase Agreement pursuant to which MCA Receivables purchased 39% of Merchant's total future

---

[3] The Affidavit of Yisroel Getter is being filed contemporaneously herewith.

accounts receivable up to the sum of $349,750 (the "Purchased Amount") in exchange for an upfront purchase price of $250,000 (the "Purchase Price").  (Getter Decl. ¶ 4, Ex. A).

Merchant agreed to remit the Purchased Amount to MCA Receivables via daily ACH debits in the initial amount of $7,500 (the "Remittance"), which amount was a good faith estimate of the specified percentage of Merchant's average daily receipts.  (*Id.* ¶ 5, Ex. A at p. 1).  The Remittance was to be debited each business day and credited toward the Purchased Amount.  (*See id.*)

The Remittance was not a set figure and could be adjusted at any time based upon a change in Merchant's revenue. (*See id.*, Ex. A §§ 1.3, 1.4).  To that end, the Purchase Agreement included a mandatory reconciliation provision as follows:

> As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount…All requests hereunder must be in writing to reconciliation@mcareconcile.com.  Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month….Such reconciliation, if applicable, shall be performed by [MCA Receivables] with in five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchant's Bank Account so that the total amount debited by [MCA Receivables] shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request.

(*Id.*, Ex. A § 1.3).[4]  The Purchase Agreement also included a mandatory adjustment provision pursuant to which the Remittance could be adjusted prospectively (as opposed to retroactively) to

---

[4] A reconciliation provision allows the merchant to seek an adjustment of the amounts being debited from its account based on its cash flow (or lack thereof).  *K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, 56 Misc. 3d 807, 817 (N.Y. Sup. Ct. 2017).  If a merchant is doing poorly, the merchant will pay less, and will receive a refund of anything taken by the company exceeding the specified percentage (which often can also be adjusted downward).  *Id.*  If the merchant is doing well, it will pay more than the daily amount to reach the specified percentage.  *Id.*

more closely reflect the specified percentage of Merchant's actual daily receipts.  (*Id.*, Ex. A §

1.4).[5]

     Pursuant to the foregoing – and specifically because the Remittance was subject to regular
adjustment based upon Merchant's actual receipts – there was no fixed period during which
Merchant was required to remit the Purchased Amount.  (*See id.*)  Indeed, the Purchase Agreement
expressly states that "there is no…payment schedule and no time period during which the
Purchased Amount must be collected by [MCA Receivables]."  (*Id.*, Ex. A at p. 1).

     Under the express terms of the Purchase Agreement, the parties agreed that the transaction
was not a loan:

> **Sale of Receipts.** Merchant and [Defendant] agree that the Purchase Price under
> this Agreement is in exchange for the Purchased Amount, and that such Purchase
> Price is not intended to be, nor shall it be construed as a loan from [Defendant] to
> Merchant.  Merchant agrees that the Purchase Price is in exchange for the Receipts
> pursuant to this Agreement, and that it equals the fair market value of such Receipts.
> In no event shall the aggregate of all amounts or any portion thereof be deemed as
> interest hereunder….

(*Id.*, Ex. A § 1.1) (bold in original).

     The Purchase Agreement provided that it would be governed by Connecticut law.  (*Id.* §
4.5).   Under the Purchase Agreement, Plaintiffs expressly consented to application of
Connecticut's prejudgment remedy statute:

> **4.13 Prejudgment Remedy Waiver**. EACH AND EVERY MERCHANT AND
> GUARANTOR OF THIS AGREEMENT…HEREBY ACKNOWLEDGE
> THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART
> IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT
> ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS
> 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW
> EACH AND EVERY MERCHANT AND GUARANTOR OF THIS

---

[5] MCA Receivables was not required to perform a reconciliation or adjustment unless Merchant
made a written request and provided the necessary documents and information.  (*See id.*, Ex. A §§
1.3, 1.4).  Merchant never made such a request or provided the necessary documents and
information such that neither a reconciliation nor an adjustment was ever performed.  (*Id.* ¶ 6).

**AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH [DEFENDANT] MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEEMENTAND (B) ALL RIGHTS TO REQUEST THAT [DEFENDANT] POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANT OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY [DEFENDANT] BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY OR GUARANTY AGREEMENT SECURING THIS AGREEMENT.**

**AS A CONDITION OF THIS AGREEMENT AND AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, BUT NOT AN EXCLUSIVE REMEDY, EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION HEREBY ACKNOWLEDGE, UNDERSTAND, AGREE AND CONSENT THAT AFG MAY ATTACH OR GARNISH ANY AND ALL OF MERCHANT AND GUARANTOR'S MONEY HELD IN ANY BANK ACCOUNT AT ANY BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH OR OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED WITH THE SECRETARY OF STATE/AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT.**

**THE PARTIES HERETO AGREE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF THEIR OWN CHOOSING WITH RESPECT TO THE TERMS AND CONDITIONS HEREIN AS WELL AS THEIR MEANING**

(*Id.*, Ex. A § 4.13) (bold and capitalization in original).[6]

---

[6] Connecticut courts have acknowledged the constitutional safeguards within the statutory framework for pre-judgment attachments as the defendant has the right to challenge the attachment after implementation, "[i]n order to comport with federal constitutional due process requirements [citation omitted] the statute requires some predicate showing by the plaintiff that there is a need for exigency and further guarantees a defendant, on request, an opportunity for a prompt postattachment hearing at which the defendant will have an opportunity to challenge the bases for the prejudgment remedy." *GMAT Legal Title Trust 2014-1, U.S. Bank Nat'l Ass'n as Legal Title Trustee v. Catale*, 213 Conn. App. 674, 689 (2022) (footnote omitted).  "The purpose of a prejudgment remedy probable cause hearing is to satisfy the constitutional due process right of parties whose property rights are to be affected, to be heard 'at a meaningful time and in a

The parties agreed that Merchant's filing for bankruptcy would not constitute an event of default. (*Id.*, Ex. A at p. 1, § 3.1).

Finally, in connection with the Purchase Agreement, Guarantor executed a personal Guaranty of Performance (the "Guaranty") pursuant to which she guaranteed the prompt and complete performance of Merchant's obligations to Defendant. (*See id.*, Ex. A at pp. 6-7).

**III.     Defendants' Breach of the Merchant Agreement and Guaranty.**

Shortly after execution of the Purchase Agreement, Plaintiff funded the Purchase Price (less applicable and disclosed upfront fees). (*Id.* ¶ 8, Ex. B).

After receiving the Purchase Price, Merchant made remittances totaling only $15,000, leaving an outstanding balance owed on the Purchased Amount of its receivables of $334,750. (*Id.* ¶ 9, Ex. C).

On September 30 and October 3, 2022, Merchant defaulted under Section 3.1(l) of the Purchase Agreement by placing a "stop payment" on the designated bank account, as evidenced by the return code "R08" on the remittance history. (*Id.* ¶ 10, Ex. C). Guarantor breached the Guaranty by failing to perform Merchant's obligations to MCA Receivables when Merchant defaulted. (*Id.* ¶ 11).

**IV.     The Connecticut Action.**

On or about October 3, 2022, MCA Receivables, through Connecticut counsel, forwarded to a Connecticut State Marshal a Writ, Summons and Direction for Garnishment or Attachment (the "Writ"); an Application for *Ex Parte* Prejudgment Remedy (the "Application"); and a Complaint (the "Complaint") against Plaintiffs. (Declaration of Roderick Woods, Esq. ("Woods

---

meaningful manner.'" *Ledgebrook Condo. Ass'n v. Lusk*, 172 Conn. 577, 583 (1977) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (additional citation omitted)).

Decl.") ¶ 3, Ex. A).  The Writ was served pursuant to Conn. Gen. Stat. Ann. § 52-278a, *et seq.*, Connecticut's prejudgment remedy statute, to which Plaintiffs had consented in the Purchase Agreement.  (*See id.* ¶ 4; Getter Decl., Ex. A § 4.13).

The Complaint alleged that Merchant had breached the Purchase Agreement and that Guarantor had breached the Guaranty.  (*See* Woods Decl. ¶ 5, Ex. A).  The Complaint noted that the Purchase Agreement included a Connecticut Commercial Waiver with regards to prejudgment remedies.  (*See id.*)

The Writ directed the Connecticut State Marshal to serve the foregoing papers upon Plaintiffs and "to serve a true and attested copy of this writ and of the accompanying Affidavit and Complaint on **Bank of America, N.A. and JP Morgan Chase, N.A.**" and "to attach to the value of **$392,250.00** of the goods, accounts, property and estate of the defendants herein, anywhere located, including funds at **Bank of America, N.A. and JP Morgan Chase, N.A.**"  (*Id.* ¶ 6, Ex. A at p. 2) (bold in original).  On or about October 4, 2022, the Connecticut State Marshal served the foregoing papers upon Plaintiffs, and also served the Writ on Bank of America and JP Morgan Chase.  (*Id.* ¶ 7).  Bank of America and JP Morgan Chase complied with the Writ by placing a hold on Plaintiffs' accounts.  (*Id.*)

On or around October 10, 2022, a California attorney for Plaintiffs, John Cha, contacted Defendants' Connecticut counsel to discuss a potential resolution of the matter.  (*Id.* ¶ 8).  Defendants' Connecticut counsel provided Mr. Cha with a copy of the of documents that had been forwarded to the Connecticut State Marshal and Plaintiffs.  (*Id.*)  Thereafter, the parties engaged in further discussions but, ultimately, were not able to reach a resolution.  (*Id.*)  From October 10 until November 17, 2022, Plaintiffs took no action to have the Writ modified or dissolved.  (*Id.*)

On November 17, 2022, a Connecticut attorney for Plaintiffs, Eric Foster, entered an appearance in the Connecticut Action. (*Id.* ¶ 9, Ex. B). Also on November 17, 2022, Mr. Foster, on behalf of Plaintiffs, filed a Claim for a Hearing to Modify or Dissolve the Writ. (*Id.* ¶ 10, Ex. C).

On December 1, 2022, at Mr. Foster's request, the Court held a hearing in the Connecticut Action. (*Id.* ¶ 11). Plaintiffs' counsel offered to post a bond and/or deposit approximately $177,000 with the Court as a means of securing a release of the attachments. (*Id.*) MCA Receivables, however, could not agree to that offer, because it contended that Plaintiffs owed a significantly greater amount. (*Id.*) The Court set a subsequent hearing for January 18, 2023, to address Plaintiffs' request to dissolve or modify the writ. (*Id.*)

On December 5, 2022, Mr. Getter received the following text message:

> I don't have time for this bullshit I know where you live. If you don't release christine Collins money, I'm coming for you and your family.

> I have contacts all over the states. Once I send them your address, it's done. I'll kill you and your family

(Getter Decl., Ex. D).

A hearing on Plaintiffs' Claim to Modify or Dissolve the Writ was originally scheduled for January 18, 2023. (Woods Decl. ¶ 13). Defendants' Connecticut counsel had a scheduling conflict with this hearing date, however, and, with the consent of Plaintiffs' counsel, asked the Court to reschedule the hearing. (*Id.* ¶ 13, Ex. E). The Court granted this motion and reset the hearing for February 2, 2023. (*Id.* ¶ 14, Ex. F). On January 23, 2023, Merchant and Guarantor filed a memorandum of law in support of their motion to modify or dissolve the Writ. (*Id.* ¶ 15, Ex. G). The memorandum omits all reference to the instant action, despite it having been filed three days

earlier, while contemporaneously seeking that MCA Receivables post a bond of $1,000,000.00. (*Id.*)

## V.      The Federal Court Action.

On January 14, 2023, Plaintiffs filed their Complaint in this case alleging causes of action for (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) RICO conspiracy; (3) Declaratory Judgment; (4) Fraud; (5) Breach of Contract; (6) violation of 42 USC § 1983; and (7) violation of the Computer Fraud and Abuse Act (the "CFAA").  (*See* Doc. No. 1).

On January 17, 2023 – notwithstanding the upcoming hearing in the Connecticut Action to modify or dissolve the Writ – Plaintiffs sought and obtained immediate *ex parte* injunctive relief (and moved for a preliminary injunction) on the same matter that was (and is) to be heard on February 2, 2023, in the Connecticut Action.  (*See* Woods Decl. ¶ 17; NYSCEF Doc. Nos. 5, 7). Plaintiffs did not disclose to the Court that they were seeking this same relief in the earlier-filed Connecticut Action and that a hearing was scheduled for February 2, 2023.  (*See* NYSCEF Doc. No. 5).

The only factual support that Plaintiffs provided in connection with their request for injunctive relief was the Collins Declaration.  (*See* Doc. No. 5-2).

## <u>LEGAL STANDARD</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must ordinarily show: "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3)

that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

"[I]t has always been the rule that the movant bears the burden of persuasion to establish [that] the situation meets the standard for a preliminary injunction, and must offer proof beyond the unverified allegations of the pleadings." *Stern*, 2021 WL 1164718, at *5 (quoting *Silver v. Lavandeira*, 2009 WL 513031, at *6 (S.D.N.Y. Feb. 26, 2009)); *see also Societe Comptoir De L'Industrie Cotonniere, Etablissements Boussac v. Alexander's Dep't Stores, Inc.*, 190 F. Supp. 594, 595 (S.D.N.Y. 1961) ("[N]othing can be considered in support of plaintiff's motion for a preliminary injunction except facts supported by affidavit"); *see also* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2949 (3d ed. 2019) ("[E]vidence that goes beyond unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction").

## LEGAL ARGUMENT

### I.   Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits.

Plaintiffs have not demonstrated a likelihood of success on the merits of any of their causes of action and, respectfully, their motion should be denied.

#### A.   Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Claim.

Plaintiffs have proffered no evidence to demonstrate a likelihood of success on their RICO claim. "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute []; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (internal quotation marks omitted). Section 1962(c) – the section upon which Plaintiffs rely – provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  Thus, to establish a violation of Section 1962(c), a plaintiff must demonstrate that each defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity or collection of an unlawful debt.

Here, the only evidence that Plaintiffs have proffered on their motion for a preliminary injunction is the Collins Declaration.  (*See* Doc. No. 2, Collins Decl.)  The Collins Declaration, however, does not refer to – much less establish – an alleged enterprise of any kind, a basic element of a RICO claim.  It contains no facts addressing Defendants' alleged connection to any enterprise or how they supposedly conducted the affairs of the enterprise.  It does not refer to – much less establish – any alleged pattern of racketeering activity.  Nor does it contain any facts establishing alleged collection of unlawful debt.  Plaintiffs' motion is utterly devoid of even the most basic facts necessary to establish a RICO claim, much less demonstrate a likelihood of success on the merits.

### 1. Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Claim Predicated on Collection of Unlawful Debt.

In addition to their failure to put forth basic facts, Plaintiffs have not demonstrated a likelihood of success on their RICO claim predicated on collection of unlawful debt because the parties' transaction was not a loan subject to usury laws.  Under the RICO statute, an "unlawful debt" is:

> [A] debt…which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and [] which was incurred in connection with…the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).

It is axiomatic that a transaction cannot be usurious if it is not a loan. *See, e.g.*, *Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735, 744 (1992) ("Usury laws apply only to loans or forbearances….If the transaction is not a loan, there can be no usury, however unconscionable the contract may be") (internal citation and quotation marks omitted); *Donatelli v. Siskind*, 170 A.D.2d 433, 434 (2d Dep't 1991) ("It is well established that there can be no usury in the absence of a loan or forbearance of money").

An agreement is not a loan unless it provides (1) a right of interest on principal, *see Donatelli*, 170 A.D.2d at 434; *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 2012 WL 1087341, at *6 (Sup. Ct. Suffolk Cty. Mar. 29, 2012) ("The concept of usury applies to loans, which are typically paid at a fixed or variable rate over a term.") and (2) an absolute right to repayment, *see, e.g.*, *Rubenstein v. Small*, 273 A.D. 102, 104 (1st Dep't 1947); *Zoo Holdings, LLC v. Clinton*, 814 N.Y.S.2d 893 (Sup. Ct. 2006); *Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 282-83 (S.D.N.Y. 2017) (distinguishing merchant cash advance agreements from loans because only loans have absolute and unconditional payment obligations).

New York law includes a strong presumption against a finding of usury, and requires it to be supported by "clear and convincing evidence." *See Ujueta v. Euro-Quest Corp.*, 29 A.D.3d 895, 895-96 (2d Dep't 2006); *see also Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975).

The great weight of authority in New York has held that merchant cash advance transactions are not loans. *See Principis Cap., LLC v. I Do, Inc.*, 201 A.D.3d 752 (2d Dep't 2022); *Kennard L. P.C. v. High Speed Cap. LLC*, 2020 N.Y. Misc. Lexis 10407, at *1-2 (N.Y. Sup. Ct. 2020), *aff'd*, 199 A.D.3d 1406 (4th Dep't 2021); *Champion Auto Sales, LLC v. Pearl Beta*

*Funding, LLC*, 159 A.D.3d 507, 507 (1st Dep't 2018).   The foregoing controlling Appellate Division decisions are consistent with dozens of lower court rulings that merchant cash advance transactions are purchases of future receivables, not loans subject to usury laws.  *See Yellowstone Cap. LLC v. Cent. USA Wireless LLC*, 110 N.Y.S.3d 485 (N.Y. Sup. Ct. 2018) ("Numerous courts – at least thirty-eight (38) – have reviewed the provisions of merchant agreements structured almost exactly as the agreement [] in this case, and uniformly held that such agreements are not usurious").

New York courts (most recently the Second Department in *Principis Cap.*) have developed a three-factor test to determine whether a merchant cash advance transaction should be considered a loan (as opposed to a purchase of future receivables).  *Principis Cap.*, 201 A.D.3d 752.  Under this test, courts evaluate: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy."  *Id.*[7]   If, as in this case, the agreements have mandatory reconciliation and adjustment provisions, an indefinite term, and provide for limited recourse in bankruptcy, the parties' transaction is not a loan.

### a.  The Purchase Agreement Has Mandatory Reconciliation and Adjustment Provisions.

The Purchase Agreement has a mandatory reconciliation provision providing that, upon Merchant's written request and its provision of certain necessary information, MCA Receivables "shall" retroactively reconcile Merchant's Remittances to ensure that the amount collected equals the specified percentage of Merchant's actual receipts during the given period.  (Getter Decl., Ex.

---

[7] Not all factors need to be met.  For instance, in *K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, the court held that the third factor "weighs against defendants," but nevertheless concluded that the parties' transaction was not a loan.  57 N.Y.S.3d 625, 633 (N.Y. Sup. Ct. 2017).

A § 1.3).  The Purchase Agreement also includes a mandatory adjustment provision pursuant to which, upon Merchant's written request and its provision of certain necessary information, MCA Receivables "shall" prospectively adjust Merchant's Remittance to more closely reflect the specified percentage of Merchant's actual daily receipts.  (*Id.*, Ex. A 1.4).  These provisions ensured that Merchant's Remittances would be based on a percentage of its revenue.  *See K9 Bytes*, 57 N.Y.S.3d at 632 ("The reconciliation provisions allow the merchant to seek an adjustment of the amounts being taken out of its account based on its cash flow (or lack thereof)").  Because the amount of Merchant's Remittances was subject to mandatory and regular adjustment, there could be no fixed repayment of "principal" or calculation of "interest" as with a loan.  (*See* Getter Decl., Ex. A §§ 1.3, 1.4).

New York courts have repeatedly held that merchant cash advance agreements containing such mandatory reconciliation and adjustment provisions are not loans.  *See, e.g.*, *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022) (finding that the parties' transaction was not a loan because it included a mandatory reconciliation provision); *Tender Loving Care Homes Inc. v. Reliable Fast Cash, LLC*, 172 N.Y.S.3d 335, 340 (Sup. Ct. 2022) (citing the parties' reconciliation provision in concluding that "as a matter of law" the transaction "is a valid agreement to purchase future accounts receivable, and not a disguised loan"); *Principis Cap.*, 201 A.D.3d at 754 (holding that the parties' transaction was not a loan because the agreement provided for "adjustments to the monthly payments made by [the defendant] to the plaintiff based on changes in [the defendant's] monthly sales"); *OriginClear Inc. v. GTR Source, LLC*, 2021 WL 5907878, at *6 (W.D.N.Y. Dec. 14, 2021) (finding that the parties' transaction was not a loan because "Defendants had a clear contractual duty to modify the debited withdraw amounts to comply with the agreed upon specified percentage"); *Calvary LLC v EBF*

*Holdings, LLC*, 2021 N.Y. Misc. LEXIS 5833, at *12 (Sup. Ct. 2021) (finding that a reconciliation provision "supports a finding that the transaction was in actuality a sale of future receivables, not a loan").

The Purchase Agreement's mandatory reconciliation and adjustment provisions evidence that, as a matter of law, the parties' transaction was not a loan.

### b.  The Purchase Agreement Has an Indefinite Term.

On its face, the Purchase Agreements states that "there is no…payment schedule and no time period during which the Purchased Amount must be collected by [Plaintiff]." (Getter Decl., Ex. A at p. 1).  Indeed, the Purchase Agreement's term is necessarily indefinite because the Remittance was subject to mandatory and regular adjustment.  (*See id*., Ex. A §§ 1.3, 1.4).

A "quintessential" indicium of a receivables purchase agreement is that it does not prescribe when payments must be completed.  *K9 Bytes*, 57 N.Y.S.3d at 633.  Instead, in a receivables purchase agreement, the payment term is indefinite because payments are "contingent upon [the merchant's] actually generating sales and those sales actually resulting in the collection of revenue."  *Four Paws*, 2017 WL 1065071, at *3; *see also Fletcher*, 2018 WL 2187076, at *4 (same); *Power Up Lending Grp.*, 2019 WL 1473090, at *5 ("[T]he term in the Agreement is indefinite because…every time Defendants' receipts change the amount of time it will take for Plaintiff to be reimbursed will change, and there is no fixed end date by which Plaintiff must be paid").  "The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement." *Four Paws*, 2017 WL 1065071, at *3.

The Purchase Agreement's indefinite term evidences that, as a matter of law, the parties' transaction was not a loan.

### c. The Purchase Agreement Does Not Make Merchant's Filing for Bankruptcy an Event of Default.

The Purchase Agreement does not make Merchant's filing for bankruptcy an event of default. (*See* Getter Decl., Ex. A § 3.1). To the contrary, it states that Merchant's filing for bankruptcy is **not** an event of default. (*Id.*, Ex. A at p. 1) ("Merchant going bankrupt…in and of itself, does not constitute a breach of this Agreement"). As such, MCA Receivables has limited recourse in bankruptcy. This factor supports a conclusion that the parties' transaction was not a loan. *See Principis Cap.*, 201 A.D.3d at 754 (rejecting defendants' usury defense where "no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default").

\*\*\*

Respectfully, the foregoing evidences that, as a matter of law, the parties' transaction was not a loan and, therefore, Plaintiffs cannot state a RICO claim for collection of unlawful debt.

### 2. Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Claim Predicated on a Pattern of Racketeering Activity.

A plaintiff alleging a pattern of racketeering must establish: (1) at least two predicate acts of racketeering occurring within a ten-year period; (2) that these predicate acts are related to each other; and (3) that these predicate acts amount to or pose a threat of continuing criminal activity. *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at \*18 (S.D.N.Y. Dec. 18, 2017).

### a. Plaintiffs Have Failed to Adequately Plead Wire Fraud.

Plaintiffs allege in conclusory fashion that Defendants committed "wire fraud through a pattern of racketeering activity" (Doc. No. 1, Compl. ¶ 164). A plaintiff who alleges racketeering activity based on mail or wire fraud must prove "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States*

17

*v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (quoting *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)).  Wire fraud must be pleaded with particularity.  *United Knitwear Co. v. N. Sea Ins. Co.*, 203 A.D.2d 358, 360 (2d Dep't 1994) (dismissing a RICO claim predicated on a pattern of racketeering activity "because the factual allegations…were not pleaded with the requisite particularity"); *see also Fekety v. Gruntal & Co.*, 190 A.D.2d 370, 371 (1st Dep't 1993).  The "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989)).  Here, Plaintiff have not identified the statements that were allegedly false or misleading; how those statements were allegedly fraudulent; when and where they were made; or even who made the statements.  They have failed to adequately plead – much less provide proof of – a pattern of racketeering activity through wire fraud.

### b.  Plaintiffs Have Failed to Adequately Plead the Continuity Requirement.

The "continuity requirement" under RICO § 1962(c) "can be satisfied either by showing a 'closed-ended' pattern of racketeering activity (*i.e.*, a series of related predicate acts extending over a substantial period of time) – or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Related*, 2017 WL 6507759, at *18 (citing numerous cases).

"Closed-ended continuity is primarily a temporal concept." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (internal quotation omitted).  Since *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989), the Second Circuit has "never found predicate acts spanning less than two years to be sufficient to constitute closed-ended continuity." *Grace Int'l*

*Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019).  Here, the transaction at issue occurred during a period of less than one month.  (*See* Doc. No. 1, Compl. ¶¶ 78-100).  As a matter of law, therefore, Plaintiffs cannot establish closed-ended continuity.

Nor can they establish open-ended continuity.[8]    Initially, as demonstrated above, the alleged predicate acts are non-actionable and, as such, there is nothing to suggest a threat of continuing criminal conduct.  Indeed, Plaintiffs do not even allege such a threat; even if they did, there is nothing to support such a claim.  Indeed, in a similar case involving RICO claims against several merchant cash advance companies, the Court held that the plaintiffs' allegations of a supposed wide-ranging scheme to defraud (by allegedly misrepresenting that loan transactions were sales of future receivables) were insufficient to establish open-ended continuity.  *Cont. Transp. Servs., Inc. v. New Era Lending LLC*, 2018 WL 11226077, at *5 (S.D.N.Y. Oct. 26, 2018).  Plaintiffs have likewise failed to allege open-ended continuity.  They have not demonstrated a likelihood of success on their RICO claim predicated upon an alleged pattern of racketeering activity.

### 3.   Plaintiffs' Section 1962(c) Claim Fails Because They Cannot Establish an Injury to Their Business or Property.

Defendants cannot establish an injury to their "business or property" because they gained on the transaction at issue.

---

[8] Open-ended continuity exists where (1) the acts of the defendant or the enterprise are inherently unlawful, such as murder or obstruction of justice, and are in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995), or (2) the enterprise primarily conducts a legitimate business but there is evidence from that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity, *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999).

A RICO plaintiff "can only recover to the extent that[] he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Section 1964(c) "requires a showing of some actual, out-of-pocket financial loss." *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 521 (S.D.N.Y. 1997) (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994)). "[D]amages as compensation under RICO § 1964(c) for injury to property must, under the familiar rule of law, place appellants in the same position they would have been in but for the illegal conduct." *Com. Union Assurance Co. v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994).

Accordingly, a plaintiff that has gained on a transaction cannot claim injury under RICO. *See, e.g.*, *Aliperio v. Bank of Am., N.A.*, 764 F. App'x 236, 239 (3d Cir. 2019) (mortgagees who gained equity in their homes due to payments had no "actual monetary loss or 'out-of-pocket loss'" to "satisfy the injury requirement of § 1964(c)"); *Comm. Union*, 17 F.3d at 612 (plaintiffs claiming fraud in sale, but who paid less for the asset at issue than its value, had no RICO claim); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1165 (2d Cir. 1993) (plaintiff lacked an injury to its business or property because it was likely to obtain the full value of the asset it purchased); *Quick v. EduCap, Inc.*, 318 F. Supp. 3d 121, 138 (D.D.C. 2018) (plaintiff who did not repay a loan lacked RICO standing); *Anderson v. Lincoln Ins. Agency Inc.*, 2003 WL 291928, at *3 (N.D. Ill. Feb. 10, 2003) (plaintiffs that received payments from defendants in excess of allegedly unlawful finance charges "cannot allege any out-of-pocket or other concrete financial loss and, thus, have no standing under RICO").

In *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 3536128, (S.D.N.Y. Aug. 17, 2022), the Court addressed the proper measure of damages in a RICO case predicated on collection of unlawful debt. The Court rejected the plaintiff's argument that its damages were "the

full $119,617 that was deducted from [its] account." *Id*. at *4. Instead, the Court reiterated the principle that "[t]he purpose of a civil RICO award is to return the plaintiff to the same financial position he would have enjoyed absent the illegal conduct." *Id*. (quoting *Trs. of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995)). The Court held that the plaintiff's damages were "the sum that was debited from its account less the sum it received and was able to enjoy." *Fleetwood*, 2022 WL 3536128, at *6.

Here, under the Purchase Agreement, Merchant remitted only $15,000. (Getter Decl. ¶ 9, Ex. C). Under this same agreement, however, Merchant received $177,500. (*See* id., Ex. B). As such, Plaintiffs have gained $162,500 on the parties' transaction and cannot establish an injury to their business or property. *See Aliperio v. Bank of Am., N.A.*, 764 F. App'x at 239.

## B. Plaintiffs Have Not Demonstrated a Likelihood of Success on Their RICO Conspiracy Claim.

RICO's conspiracy section (Section 1962(d)) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of" 18 U.S.C. § 1962(a), (b), or (c). To state a claim under § 1962(d), a plaintiff must allege a valid underlying claim under subsections (a), (b), or (c), plus an agreement to carry out such acts. *See, e.g.*, *First Cap. Asset*, 385 F.3d at 182. Here, as noted above, Plaintiffs have failed to allege even the most basic facts necessary to establish a RICO claim under Section 1962(c) and, as such, they have no likelihood of success on the merits of their RICO conspiracy claim.

## C. Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Declaratory Judgment Claim.

Plaintiffs seek a declaratory judgment that "[u]nder controlling New York law, the [Purchase Agreement is] void *ab initio*" based on alleged usury. (Doc No. 1, Compl. ¶¶ 173-74). Putting aside that the Purchase Agreement is governed by Connecticut law, it is well-settled under

New York law that corporate entities and their guarantors may only assert usury as an affirmative

defense, and not as a claim for affirmative relief.  *See Paycation Travel, Inc. v. Glob. Merch. Cash,*

*Inc.*, 141 N.Y.S.3d 319 (2d Dep't 2021).  Indeed, pursuant to the foregoing, New York courts

routinely dismiss claims for declaratory judgment based upon alleged usury. *See, e.g.,*

*Streamlined Consultants*, 2022 WL 4368114, at *3 ("Plaintiffs are barred from bringing

affirmative claims for relief based on allegations of usury").[9]  Plaintiffs have no likelihood of

success on their declaratory judgment claim.

### D.  Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Fraud Claim.

Plaintiffs allege that Defendants fraudulently induced them into entering the Purchase

Agreement and that the Purchase Agreement contains fraudulent fees.  (Doc No. 1, Compl. ¶¶ 175-

86).  Plaintiffs have not provided any facts to support these allegations.  (*See* Doc. No. 2, Collins

Decl.)  They have no likelihood of succeeding on their fraud claim.

### E.  Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Breach of Contract.

Plaintiffs allege that Defendant breached the Purchase Agreement by failing to advance the

amounts due.  (Doc No. 1, Compl. ¶¶ 189-93).  Again, Plaintiffs have not provided a single fact to

---

[9] *See also, e.g., Tender Loving Care Homes Inc. v. Reliable Fast Cash, LLC*, 172 N.Y.S.3d 335, 341 (Sup. Ct. Richmond County June 22, 2022) ("A claim of usury cannot form the basis of a cause of action asserted for affirmative relief"); *OT Aspekt & Chiropractic PLLC v. Fox Cap. Grp., Inc.*, 154 N.Y.S.3d 217 (N.Y. Sup. Ct. 2021) ("[D]efendant has sufficiently demonstrated that plaintiffs' affirmative relief sought in their first four causes of action, on the basis of their allegation that this was a criminally usurious loan…all fail as a matter of law"); *K9 Bytes, Inc. v. Arch Capital Funding, LLC,* 56 Misc.3d 807, 815 (Sup. Ct. West. Co. May 4, 2017) (dismissing usury cause of action and affirming that "it has long been settled in this state that criminal usury may only be asserted as a defense by a corporation, and never as a means to seek affirmative relief"); *Scantek Med., Inc. v. Sabella*, 582 F.Supp.2d 472, 474 (S.D.N.Y. 2008) (holding that a debtor could not seek declaratory relief to void an agreement based upon criminal usury).

support these allegations.  (*See* Doc. No. 2, Collins Decl.)  They have no likelihood of succeeding on their breach of contract claim.

> ### F. Plaintiffs Have Not Demonstrated a Likelihood of Success on Their Section 1983 Claim.

Section 1983 of Title 42 of the United States Code provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Defendants are private actors – not government officials. Defendants merely brought an action in their private capacity in Connecticut court.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West*, 487 U.S. at 49 (internal quotation marks omitted).  Plaintiff have not demonstrated a likelihood of success on their Section 1983 claim.

### G.  Plaintiffs Have Not Demonstrated a Likelihood of Success on Their CFAA Claim.

To demonstrate a likelihood of success on their CFAA claim, Plaintiffs must put forth facts that Defendants (1) accessed a protected computer; (2) without any authorization or exceeding its authorized access; and (3) caused loss exceeding $5,000.  *Redcell Corp. v. A.J. Trucco, Inc.*, 2022 WL 683007, at *3 (S.D.N.Y. Mar. 8, 2022) (citing 18 U.S.C. § 1030(g)).  Again, Plaintiffs have not provided a single fact to support these allegations.  (*See* Doc. No. 2, Collins Decl.)[10]  They have no likelihood of succeeding on their CFAA claim.

## II.    Plaintiffs Have Not Demonstrated Irreparable Harm.

In addressing a claim of irreparable harm, it is well settled that delay may "preclude the granting of preliminary injunctive relief because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (internal citation and quotation marks omitted).  The Second Circuit has "found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."  *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005).  "There is no bright-line rule for how much delay is too much, but courts in this Circuit typically decline to grant preliminary injunctions in the face of unexplained delays

---

[10] In their Memorandum of Law, Plaintiffs argue that "the only possible way Defendants could have been aware of [Plaintiffs' Bank of America account] was by logging into Plaintiffs' Chase bank account to search for other potential bank accounts" and that "[t]his would clearly be activity that exceeded Defendants' authorized access."  (Doc. No. 5, Pl.'s Memo. of Law at p. 4).  Putting aside that argument in a legal brief is insufficient to meet a preliminary injunction's evidentiary threshold, the CFAA does not "speak to the misuse of permitted access or the misappropriation of information which [a party] is authorized to access."  *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 523 (S.D.N.Y. 2013) (citing cases).

of more than two months." *Hodnett*, 2021 WL 535485, at \*6 (quoting *Monowise Ltd. Corp. v. Ozy Media, Inc.*, 2018 WL 2089342, at \*2 (S.D.N.Y. May 3, 2018)).

Here, Plaintiffs knew in mid-October 2022 that there was a hold on their accounts (and the reason for that hold).  (*See* Woods Decl. ¶ 8).  Nevertheless, they delayed seeking injunctive relief in this Court until January 17, 2023.  (*See* Doc. No. 5, OTSC).  Plaintiffs' delay of over three months precludes a finding of irreparable harm.

**III.     The Balance of the Equities and the Public Interest Militate Against Injunctive Relief.**

Plaintiffs' inequitable conduct in obtaining *ex parte* injunctive relief from this Court without disclosing the Connecticut Action and the upcoming hearing in that case where the matter should be properly adjudicated militates against injunctive relief.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court dissolve the TRO and deny Plaintiffs' motion for a preliminary injunction.

Dated: January 30, 2023                              Respectfully Submitted,


                                                              */s Will Parsons*
                                                              Will Parsons
                                                              WELLS LAW P.C.
                                                              229 Warner Road
                                                              Lancaster, New York 14086
                                                              (716) 983-4750
                                                              steve@wellspc.com

                                                              *Attorneys for Defendants*
                                                              *MCA Receivables LLC and*
                                                              *Yisroel Getter*